Moncure, J.
delivered the opinion of the court:
On the 12th day of October, 1863, John Mann presented a petition, supported by his affidavit thereto annexed, to the judge of the Circuit court of Monroe county, representing that he was “held or claimed in cus *444 *0<^7 ^7 Partean enrolling officer for said county, acting under the directions and authority of Lt. A. F. Matthews, chief enrolling officer for the 12th Congressional district, upon the ground that he is liable to be conscripted and placed in the military service of the Confederate States under the several acts of Congress upon that subject;” alleging “that he is not liable to be so conscripted and held in custody, because he is both a millwright and a miller, actually engaged attending to one of the most valuable mills in Monroe county, or in millwrighting in the mill, and habitually engaged in working for the public at one or the other trade, principally however for the last year as miller;” stating that “ the enrolling officers have conceded this right to exemption as an original right, but say he has lost his right because he joined a company of volunteers about 18 months ago, and after serving for about a month employed a substitute in his place who was then over 40 but not now over 45 years of age, and therefore liable to the late call of the President;” and praying for the award of a writ of habeas corpus, directed to the said Parke and Matthews. A writ was. accordingly awarded, directed “to Thomas F. Parke, enrolling officer of the Confederate States for the county of Monroe, Yirginia;” who forthwith made his return, claiming, “that the said John Mann is lawfully held by him as a conscript, liable to service under what is commonly, called the conscript law, and acts supplementary thereto, of the Congress of the Confederate States;” and stating that “he is held upon no other claim.” Whereupon the parties being fully heard, it was the opinion of the court “ that the said Mann is liable to be conscripted and placed in the military service of the Confederate States, as claimed by the said enrolling officer:” and it was ordered “that he be held in custody accordingly.”
There was an agreement of facts, signed by the at *445 torneys of the parties, in these words: “ That the plaintiff, on the 1st day of April, 1862, joined as a volunteer, Capt. Bryant’s company of volunteers, and that on the 2nd day of May, 1862, he presented Adam Yance to the company as a substitute, who was received as such; as may be seen by the certificate of Col. Patton, herewith filed as a part of these agreed facts, marked A; that said Yance was then over 40 years of age, but is not now 45 years of age.” The certificate of Col. Patton is in these words :
H’d Qr’s, Disk Gauley, White Sulphur Springs,
May 21, 1862.
This is to certify that John Mann has this day furnished a substitute in the person of Adam J. Yance, who has been examined and received by a surgeon of the O. S. A., and who is not subject to military duty in this or any other State. Above Adam J. Yance is now a member of Capt. Thos. A. Bryant’s Monroe Artillery.
By order of Geo. S. Patton,
Col. Com’g. Dist. Gauley.
R. Rand,
Lt. & A. A. General.
A bill of exceptions was taken to the opinion of the court, and is in these words:
“ Be it remembered, that upon the trial of this cause the facts agreed upon and signed by the counsel of the parties on paper marked Ro. 2 and herewith filed, are certified as a part of the facts of the case. It was also proved, that from September 1862, to the present time, the petitioner has been the miller, skilled and engaged as such, in a large and valuable flouring mill in the county of Monroe, with a large country custom, and that his trade before he became miller was that of millwright, generally employed as such. It -was also proved, that in cases where members of volunteer companies had furnished substitutes, and afterwards became liable to *446 perform military service, by reason of the substitutes being called into service on their own account, the enrolling officers were directed, by general instructions from the War department, dated subsequent to the time when the petitioner had furnished his substitute, to let the substitutes remain in the respective companies to which they were attached, and to enrol those who had employed such substitutes as conscripts. These being all the facts proved, and the court being of opinion, that' the petitioner, having become a member of a volunteer company, could not, by afterwards engaging in business as a miller, discharge himself from his voluntary obligation tó perform military service; that the substitute furnished by him, only relieved him from such service until such substitute became liable to be called. into service on his own account; that at the time the petitioner left his company and engaged in business as a miller, he was not absolutely, but temporarily or conditionally discharged; and that the military authorities, in the exercise of their necessary powers, might detail him from the company to which he originally belonged, and enrol him amongst the conscripts; the court refused to discharge the petitioner, and remanded him to the custody of the enrolling officers. To which opinion of the court the petitioner by his counsel excepts, and prays that his said exception may be signed, sealed, and made a part of the record, which is done accordingly.”
The petitioner applied to this court for a supersedeas; which was awarded.
By act of Congress approved April 16, 1862, entitled 11 an act to further provide for the public defence,” and commonly called the conscript law, the. President was “ authorized to call out and place in the military service of the Confederate States for three years, unless the war shall have been sooner ended, all white men who are residents of the Confederate States, between the *447 ages of eighteen and thirty-five yeai's, at the time the call or calls may be made, who are not legally exempted from military service.” By the 9th section it was enacted, “that persons not liable for duty may be received as substitutes for those who are, under such regulations as may be prescribed by the Secretary of War.”
In May 1862, Adam J. Vance, who was then not liable for duty, being over 40 years of age, was received as a substitute for the petitioner in Oapt. Bryant’s company of volunteers.
By act of Congress, approved September 27,1862, entitled “an act to amend an act entitled ‘an act to provide further for the public defence,’ approved April 16,1862,” the President was “authorized to call out and place in the military service of the Confederate States for three years, unless the war should have been sooner ended, all white men who are residents of the Confederate States, between the ages of 35 and 45 years, at the time the call or calls may be made, and who are not at such time or times legally exempted from military service,” &c.
By act of Congress, approved October 11,1862, commonly called the exemption law, and entitled “ an act to exempt certain persons from military duty, and to repeal an act entitled ‘an act to exempt certain persons from enrolment for service in the army of the Confederate States,’ approved 21st April, 1862,” a great many persons were exempted from military sendee in the armies of the Confederate States. Among the exemptions is one in favor of “ all shoemakers, tanners, blacksmiths, wagon makers, millers and their engineers, millwrights skilled and actually employed at their regular vocation in the said trades, habitually engaged in working for the public, and whilst so actually employed: Provided, said persons shall make oath in writing that they are so skilled and actually employed at the time, *448 as their regular vocation, in one of the above trades, which affidavit shall only bo prima facie evidence of the facts therein stated : Provided further, that the exemptions herein granted to persons by reason of their peculiar mechanical or other occupation or employment, not connected with the public service, shall be subject to the condition that the products of the labor of such exempts, or of the companies and establishments with which they- are "connected, shall be sold and disposed of by the proprietors at prices not exceeding seventy-five per centum upon the cost of production, or within a maximum to be fixed by the Secretary of War, under such regulations as he may prescribe: And it is further provided, that if the proprietors of any such manufacturing establishments shall be shown, upon evidence, to be submitted to, and judged of, by the Secretary of War, to have violated, or in any manner evaded the true intent and spirit of the foregoing proviso, the'exemption therein granted shall no longer be extended to them, their superintendents or operatives in said establishments, but they and each and every one of them shall be forthwith enrolled under the provisions of this act, and ordered into the Confederate army, and shall, in no event, be again exempted therefrom by reason of said manufacturing establishments or employment therein.”
It appears that the petitioner became a miller in Septemper 1862, but on what day of that month does not appear; it having been proved that from September 1862 to the time of the trial, he had been the miller, skilled and engaged as such, in a large and valuable flouring mill in the county of Monroe, with a large country custom; and that his trade before he became miller was that of a millwright, generally employed as such.
It further appears that the President has from time to time made all the calls authorized to be made by him by *449 the conscript law and the act amendatory thereof before mentioned; having in July 1863, as stated in the petition, made the last call, which was for persons between the ages of 40 and 45 years. The effect of this last call was to make Adam J. Vance, the petitioner’s substitute, liable for military service on his own account, he being under 45 years of age; so that he -could no longer be a substitute for the petitioner.
But while the petitioner thus lost his exemption on the ground of having a substitute, he claimed to be exempt on the ground of being a miller. And the sole question which seems to have been litigated by the parties- and decided by the Circuit court upon the facts agreed and proved was, whether he could be exempt as miller under, the circumstances; he having become a miller after he had become a volunteer and put in a substitute, though before the latter became liable to military service on his own account; and this is the only question which we will consider and decide. It was not controverted that Adam J. Vance was a proper substitute, at least until he became liable to military service on his own account, nor that he was duly received as such; nor that the petitioner would have been entitled to exemption upon the ground of his being a miller, but for the fact of his having become such after he had become a volunteer and put in a substitute. It was not pretended that he had not complied with all the provisos, or had broken any of the conditions on which the exemption claimed by him was granted by law, or had not conformed to any regulation's prescribed by the Secretary of War in regard to substitutes or exemptions. No such regulations were made a part of the case agreed, or proved on the trial, or otherwise brought into the record. We regard the case therefore as standing upon the naked question before stated.
Upon that question the Circuit court was of opinion, *450 that the petitioner, having become a member of a volunteer company, could not, by afterwards engaging in business as a miller, discharge himself from his voluntary obligation to perform military service; that the substitute furnished by him, only relieved him from such service until such substitute became liable to be called into service on his own account; that at the time the petitioner left his company and engaged in business as a miller, he was not absolutely, but temporarily or conditionally discharged; and that the military authorities, in the exercise of their necessary powers, might detail him from the company to which he originally belonged, and enroll him amongst the conscripts. Is this opinion of the Circuit court erroneous or not ?
The law expressly gives, or recognizes, the right to furnish a substitute. It declares, as before shown, “that persons not liable for duty may be received as substitutes for those who are, under such regulations as may be prescribed by the Secretary of War.” When a person furnishes a substitute who is duly received as such, the principal becomes thereby exempt from military duty, and the exemption continues as long as the substitution exists. A person not liable for duty at the time he is offered as a substitute, as where he is over the existing maximum age, may be received as such; with this condition however, that if the maximum age should after-wards be so extended by law as to embrace the substitute, and thus make him liable for duty on his own account, the substitution will cease and the principal again become liable, at least unless he be exempt on some other ground. This is the construction which, in practice, has been put upon the law, and it does not seem to be unsound. Whether the substitution be complete or partial in its result, the exemption of the principal during its continuance is alike complete. When the substitute is received, being then over the existing max *451 bnum age, non constat that he ever will he liable for duty on his own account, and he is therefore received for at least the full term of the principal. The subsequent passage of a law extending the maximum age and making the substitute liable for duty on his own account, cannot, in reason, affect the efficacy of his exemption during its existence. Being exempt from military duty, he is free to engage in other pursuits; and especially those which are beneficial to the public and useful to our defence; and he is entitled to all the privileges annexed by law to such pursuits, to which he would have been entitled if he had never before been liable for military duty.
In this case the principal, after furnishing a substitute according to law and obtaining his discharge from military service, engaged in.the useful pursuit of a mdler, (having previously been a millwright,) and continued to be so engaged down to the time of the trial. "While he was so engaged the exemption law was passed, expressly declaring all millers, such as he was, exempt from military service, and an amendatory conscript law was passed making his substitute liable for military service on his own account. Why is he not entitled to the benefit of the exemption law, just as much as he would have been if he had never before been liable for duty ? Though once so liable he had discharged himself from that liability, and continued to be so discharged until his claim to the new exemption accrued. He is certainly within the letter of the exemption law, and it is not perceived why he is not within its spirit also. The Circuit court lays stress upon the fact that the principal was a volunteer; and says that having become a member of a volunteer company, he could not, by afterwards engaging in business as a miller, discharge himself from his voluntary obligation to perform military service. But surely it can make no difference *452 whether the principal be a volunteer or a mere con- „ . „ , script when he furnishes a substitute. In either case, it seems, the substitute is accepted and enrolled for three years aidess the war be sooner ended. A volunteer^ whose remaining term of service may be short, becomes as completely discharged by furnishing a substitute for a full term, as doés a mere conscript. The voluntary obligation of the former is not more binding than the legal obligation of the latter, and is certainly not less meritorious. Why then should it deprive the former of the benefit of an exemption to which the latter is entitled ? ISTor can it make any difference whether a member of a volunteer company, who furnishes a substitute and afterwards becomes liable to perform military service by reason of his substitute being called into service on his own account, be subject, to be returned to his place in such company or to be enrolled as a conscript. ■ In either case, it is presumed, his term of service under the conscript law would run from the date of his original enlistment. The enrolling officers are directed in such cases, by general instructions from the War department, to let the substitute remain in the company to which he was attached, and to enrol the principal as a conscript. This is reasonable enough, but surely the principal should have the same benefit of the exemption law that any other conscript would have.
We are therefore of opinion in this case that the judgment of the- Circuit court is erroneous and ought to be reversed, and the petitioner discharged from the custody of the enrolling officer.
But while we have taken cognizance of this case on account of its peculiar circumstances, we deem it proper to remark that a person who is in custody of an enrolling officer under the conscript law, and claims to be exempt from military service, either by reason of having a substitute, or upon any of the grounds of exemption *453 set forth in the exemption law, is not entitled to the benefit of the writ of habeas corpus until he has failed to obtain the relief to which he is entitled by pursuing the regulations on the subject prescribed by act of Congress or the War department. There is a manifest distinction in this respect between the case of a person who is under 18 or over 45 years of age, and that of one who is within those ages. The authority of the President under the conscript law to call out and place in the military service, is expressly limited to persons within those ages. An enrolling officer who takes and holds as a conseript, a person not within those ages, acts at his peril, without any warrant or authority of law, and is a mere wrong-doer. Accordingly it was held in the cases of Stilwell v. Cloud, and Smith v. Cloud, recently decided by this court, that a citizen above the age of 45 years at the date of the call of the President for conscripts under the ’act of Congress amending the original conscript law, who is enrolled and detained in custody as a conscript by an enrolling officer under color of the act of Congress and call of the President aforesaid, is not bound, in order to obtain a release and discharge from such custody, to apply to any of the constituted authorities of the Confederate States, but may, without any such previous application, properly petition any Circuit court or any judge thereof in vacation for a writ of habeas corpus, and upon proving his case to the satisfaction of such court or judge, will be entitled to a judgment discharging him from such custody. But the same principle does not apply to a person whose age is within the limits prescribed by the conscript law. All white men who are residents of the Confederate States, between the ages of 18 and 45 years, are, under the acts of Congress, prima facie liable for military duty, and the burden of showing exemption from such liability devolves on those who claim it In regard to the ex- *454 eruption arising from bodily or mental incapacity or imbecility, the exemption law expressly refers to “rules to be prescribed by the Secretary of Warand by an act of Congress entitled “an act to establish places of rendezvous for the examination of enrolled men,” approved October 11,1862, provision is made for the appointment of-a board of - surgeons for each Congressional district, any one or more of whom is required to attend a place of rendezvous to be established in each county &c., for~the examination of enrolled persons; and the decisions of said surgeons, under regulations to be established by the Secretary of War, as to the physical or mental capacity of any such person for military duty in the field, are declared to be final. In regard to substitutes also, the 9th section of the conscript law expressly refers to “such regulations as may be prescribed by the Secretary of War.” And in regard to exemptions generally, we know in point of fact, as indeed from necessity must be the case, that regulations have been adopted by the War department, though we cannot know, judicially, what they are, as they have not been made a part of the record and thus brought before us. A person between the ages of 18 and 45 held as a conscript by the proper enrolling officer is not, necessarily, detained without lawful authority, even though in point of fact he may be exempt from military duty. He must assert and prove his claim to the officer in the mode, if any, prescribed by the lawful regulations of the department; and if he fails to obtain in a reasonable time in that way the discharge to which he may be entitled, then, and not till then, he may complain of being unlawfully detained and have the benefit of the writ of habeas gotjpus. On the trial of the writ before the Circuit court or judge, the regulations of the war department which may be pertinent to the subject or 'relied on by either party, ought, by such party, to be made a part of the *455 record, or they cannot be noticed by the appellate court. The course thus indicated ought to be pursued, not only in justice to the Confederate authorities, which ought not to be' unnecessarily involved in the cost of litigation, and obstructed in the discharge of their important functions connected with the public defence, but also to prevent the courts of the country from being burdened with controversies which might by pursuing that course be avoided or more speedily and cheaply settled. Under these considerations we have found some difficulty in taking cognizance of this case, but have decided to do so, as the parties seemed to be at issue only upon a point of 'law the decision of which properly belongs to the courts.
Judgment eeveesed.